UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
STEVE ROSADO,                :

              :
        Petitioner,     :
              :  11 Civ. 3747 (KBF)(THK)
              :       PRO SE
    -against-         :
              :  **REPORT AND RECOMMENDATION**
DAVID M. UNGER, Superintendent of  :
Wyoming Correctional Facility,   :
              :
        Respondent.   :
---------------------------------------X

**TO: HON. KATHERINE B. FORREST, UNITED STATES DISTRICT JUDGE.**
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

This habeas corpus proceeding was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72.1(d) of the Local Civil Rules of the Southern District of New York.

Petitioner Steve Rosado was convicted, after a jury trial in New York Supreme Court, New York County, of four counts of Rape in the Second Degree, N.Y. Penal Law § 130.30(1)(McKinney's 2011); four counts of Rape in the Third Degree, N.Y. Penal Law § 130.25(2) (McKinney's 2011); and two counts of Endangering the Welfare of a Child, N.Y. Penal Law § 260.10 (McKinney's 2011). On August 30, 2005, he was sentenced as a second felony offender to an aggregate prison term of four and one-third to eleven years.[1]

---

[1] On January 1, 2004, Petitioner was convicted in the Queens County Supreme Court of the felony of Possessing a Sexual Performance by a Child, N.Y. Penal Law §. 263.16 (McKinney's

COPIES MAILED
TO COUNSEL OF RECORD ON 5/4/12

Petitioner seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, claiming that (1) the New York State courts improperly denied Petitioner's challenge to the prosecution's peremptory juror strikes, in violation of Batson v. Kentucky, 476 U.S. 79, 85, 106 S. Ct. 1712, 1716-17 (1986); (2) the state courts improperly denied Petitioner access to the trial transcript in violation of the Equal Protection Clause and Griffin v. Illinois, 351 U.S. 12, 76 S. Ct. 585 (1956); (3) the trial court improperly discharged a juror who stated she could remain impartial; (4) the trial court improperly precluded Petitioner's counsel from cross-examining the Complainant about statements that bore on her credibility; and (5) the trial court improperly admitted prejudicial evidence that Petitioner participated in telephone calls with the Complainant and another underage woman.

For the reasons that follow, the Court respectfully recommends that the Petition be denied.

## FACTUAL BACKGROUND

In 2003, the then 23-year-old Petitioner was introduced online to the Complainant, a 14-year-old girl, through the Complainant's

---

2011). (See Transcript of Sentencing Hearing, dated Aug. 30, 2005, at 3-4, 27-28.)

14-year-old friend SX.[2] (Trial Transcript, dated July 7, 2005 ("Tr."), at 4, 7.)   After communicating online, the two met in person in late 2003 when they went to see a movie. (See id. at 6.) Shortly thereafter, the Complainant visited Petitioner's apartment on several occasions and they had sexual intercourse. (See id. at 16-17, 20-28.)   The Complainant's friends, SX and SG, both minors, sometimes accompanied the Complainant to Petitioner's apartment and saw Petitioner and the Complainant kiss, hold each other, and go into Petitioner's bedroom.   (See id. at 248-51, 255, 265, 267-68, 271.)   Petitioner and the Complainant continued to communicate online and the Complainant continued to go to Petitioner's apartment through February 2004, and then again from June to October 2004. (See id. at 6-8, 20-22, 26-31, 35-39, 47-48, 118, 130-35.)   The Complainant did not tell her mother where she was when she visited Petitioner's apartment.   (See id. at 19, 25, 29, 49-50, 121-22, 126.)

On October 16, 2004, after an anonymous report to the police, a detective interviewed the Complainant at her home, where she initially claimed not to have a boyfriend or be sexually active. (See id. at 235-36.)   But the Complainant then told the detective that she had sex with Petitioner about twenty-four times. (See id.

---

[2] In this Report and Recommendation, the Complainant's underage friends are identified by their initials to protect their identities.

3

139-40.)  Petitioner was arrested the next day, October 17, 2004.
(See id. 306-08.)

Following Petitioner's arrest, Petitioner's friend told the
Complainant that Petitioner wanted her to know that he still loved
her and that the Complainant should try to help him.  (See id. at
163-64.)  Petitioner also called the Complainant several times,
reiterating that she should try to help him.  (See id. at 163.)
After receiving these calls, the Complainant told the prosecutor
that she had not had sex with Petitioner as often as she had
alleged.  (See id. at 142, 160, 162-64.)  The Complainant also
mailed two letters to Petitioner's counsel, stating that she had
never had sex with Petitioner.  (See id. at 141-42, 158-59.)  In
May 2005, the Complainant's friend arranged a phone call between
the Complainant and Petitioner, who was in prison.  (See id. at
281.)  During the phone call, Petitioner again told the Complainant
that he loved her and "reminded [the Complainant] that [she] should
be trying to get him out."  (Id. at 53.)

At trial, the prosecution sought to admit testimony about the
phone calls as evidence of Petitioner's consciousness of guilt.
During direct examination of the Complainant, Petitioner's counsel
objected, and the court agreed that the evidence did not tend to
show consciousness of guilt.  (See id. at 56-57.)  The trial court
ruled that were Petitioner's counsel to cross-examine the

4

Complainant about her recantation statements, then "the nature of these calls can come out." (Id. at 58.) Petitioner's counsel raised no objection; instead, he clarified that the court was referring to "any communications between [Petitioner] and the complainant," and said "[t]hen okay." (Id. at 144.) Petitioner's counsel proceeded to cross-examine the Complainant about her recantation statements. (See id. at 141-42.) On re-direct, the trial court explained to the jury that Petitioner's counsel opened the door to the prosecution's questions about the phone calls between Petitioner and the Complainant, which the court had previously prevented the prosecution from pursuing. (See Tr. At 157.)

In addition to presenting evidence about the Complainant's recantation statements, (see Tr. 141-42, 158-60, 162-66,) Petitioner presented other evidence related to the Complainant's credibility and her relationship with Petitioner. This evidence included testimony from friends of the Complainant and Petitioner (see id. at 250-51, 255, 259-61, 264-65, 267-71, 275-76); testimony that the Complainant lied to her mother about where she was when she met with Petitioner (see id. at 19, 25, 29, 49-50, 121-22, 126); and testimony that the Complainant initially told the police that she had not had sexual intercourse with Petitioner (see id. at 140, 154, 236).

5

The trial court prohibited cross-examination of the Complainant about certain statements on her blog that Petitioner asserted were related to Complainant's credibility, mental stability, and ability to perceive reality. (See id. at 72-73.) Specifically, these blog statements included references to "self-mutilation," "cult-related activities," "black magic," "Gothic" culture, and a "desire for blood." (See id. at 64, 68-69, 72.) These postings did not refer to Petitioner or the Complainant's relationship with him, and the trial court considered the posts to be "going out into regions of thought that . . . will be totally unhelpful for the jury in resolving these issues." (Id. at 73.)

During the trial the court learned that Juror Number 6 had passed a note to a court officer (1) asking who anonymously tipped off the police to Petitioner's actions and commenting critically that the Complainant was chewing gum on the witness stand. She also said out loud that the Complainant had provided inconsistent testimony. (See id. at 172-73, 194-98.) The court determined that the juror had engaged in gross misconduct, discharged her from the jury, and replaced her with an alternate juror. (See id. at 224-27.)

On July 13, 2005, the jury found Petitioner guilty of four counts of Rape in the Second Degree, four counts of Rape in the Third Degree, and two counts of Endangering the Welfare of a Child.

6

On August 30, 2005, Petitioner was sentenced to a prison term of four and one-third to eleven years.

## PROCEDURAL HISTORY

### I. Direct Appeal

On July 31, 2006, Petitioner filed a direct appeal to the Appellate Division, First Department. Petitioner raised six claims: (1) that the prosecution improperly exercised peremptory challenges to remove all four Hispanics from the jury panel; (2) the trial court improperly precluded Petitioner's counsel from cross-examining the Complainant about statements on her blog that bore on her credibility; (3) the trial court improperly discharged a sworn juror who stated she could remain impartial; (4) the trial court improperly admitted prejudicial hearsay evidence that Petitioner participated in phone calls with the Complainant and another underage woman; (5) the trial court improperly ruled that, if Petitioner testified at trial, the prosecution could question him regarding his prior conviction for possessing child pornography;  and (6) the trial court improperly imposed both a supplemental sex offender victim's fee and a DNA fee at sentencing. (See Brief of Petitioner-Appellant, dated July 31, 2006, at I-ii.)

On November 29, 2007, the Appellate Division held the appeal in abeyance and remanded the matter for further proceedings pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712

7

(1986), to allow the prosecution an opportunity to offer ethnicity-neutral reasons for its peremptory challenges.  See People v. Rosado, 45 A.D.3d 508, 508 846 N.Y.S.2d 165, 166 (1st Dep't 2007). The Appellate Division concluded that Petitioner established a prima facie case of discrimination, satisfying step one of Batson, by showing that the prosecution had exercised a peremptory challenge against every Hispanic panelist, after other venirepersons were excused for cause or on consent.  See id. Moreover, the Appellate Division added, the prosecution used half of its eight peremptory challenges to eliminate the Hispanic panelists, while the percentage of Hispanics in voir dire was slightly over ten percent.  See id.

At the Batson hearing, the prosecution explained the criteria it looked for in a juror: a person willing to follow the law; someone who was middle aged; and someone who had contact with teenagers and could assess the credibility of a teenager. (See Batson Hearing Transcript ("B. Tr."), dated Dec. 20, 2007, at 7-10.)  In addition, the prosecution generally did not seat people who were social workers; were preschool or elementary school teachers; who had sat on a jury in a case in which no verdict was reached; or who indicated that they did not want to sit on the jury. (See id.)  The prosecution then explained its challenges to the four jurors in question: Blanco, Mejia, Alberto, and Erazo.

8

First, the prosecution explained it struck prospective juror Blanco because Blanco had approached the bench to tell the court that her brother was in jail for a parole violation and that he was on probation in Houston, Texas, as a result of an accusation of alleged domestic violence. (See B. Tr. at 10, 16, 33.)  Blanco was also single and had no children. (See id. at 11.)   Petitioner countered that the prosecution had not challenged a female, black juror, Angela Addison, who had been prosecuted by the Manhattan District Attorney's Office, the same office prosecuting Petitioner, for theft of services. (See id. at 16.)

Second, the prosecution struck prospective juror Mejia because he conducted "social research" and his ex-wife was a social worker, factors that could bias him toward Petitioner. (See id. at 12.) Petitioner argued, however, that the prosecution demonstrated a discriminatory intent by failing to question Hispanic panelists like Mejia as aggressively as others. (See id. at 17-19, 21, 22.) Specifically, the prosecution did not ask how Mejia's work in "social research" related to social work and whether he worked with young people. (See id. at 17-19.)

The prosecution explained that it struck prospective juror Alberto because Alberto suffered from nausea and diarrhea, and he would be inattentive during and absent from parts of the proceedings. (See Pretrial Transcript, dated June 29, 2005, ("Pre.

9

Tr.") at 108; B. Tr. at 12-13.)   Petitioner pointed out that because Alberto had three young children, he otherwise fit the type of juror the prosecution sought. (See B. Tr. at 20-21.)

The prosecution said that it struck prospective juror Erazo because Erazo had sat on a civil jury that had not reached a verdict. (See id. at 13.)   Petitioner argued that the prosecution could not assume from Erazo's statement about his prior jury service that he had sat on a case that resulted in a hung jury or mistrial, and the prosecution did not question Erazo further to determine what he meant.   (See id. at 22).   Erazo also had a teenage daughter, one of the qualities the prosecution sought in a juror. (See id.)   Petitioner contended that despite this favorable characteristic, the prosecution challenged Erazo because he was Hispanic. (See id. at 22-23.)

Based on the record, the trial court evaluated the credibility of the prosecution's race-neutral reasons and determined that Petitioner had not met his burden of proving discriminatory intent. (See id. at 30.)

At the conclusion of the Batson hearing, Petitioner requested, through counsel, transcripts of the pretrial and trial proceedings. The trial court denied this request. (See B. Tr. at 40-41.) Petitioner was represented on direct appeal by assigned counsel, who had access to the transcript pursuant to New York Criminal

10

Procedure Law § 460.70; he filed two appellate briefs, both of which cited to the trial transcript. (See Brief of Defendant-Appellant, dated July 31, 2006; Supplemental Brief of Defendant-Appellant, dated Feb. 5, 2008.) Petitioner also filed a motion for leave to file a pro se supplemental brief to assert that the court improperly denied him, as an indigent defendant, free copies of the trial transcripts. Petitioner's motion was denied.

On July 22, 2008, the Appellate Division unanimously affirmed Petitioner's conviction. See Rosado, 53 A.D.3d 455, 862 N.Y.S.2d 41 (1st Dep't 2008). The New York Court of Appeals denied leave to appeal on October 9, 2008 and, on May 4, 2009, the United States Supreme Court denied Petitioner's petition for a writ of certiorari. See People v. Rosado, 53 A.D.3d 455 (1st Dep't), lv. denied, 11 N.Y.3d 55 (2008), cert. denied, 129 S. Ct. 2161 (2009). The New York Court of Appeals also denied Petitioner's motion to file a pro se supplemental brief asserting that he was denied access to the trial transcript in violation of Griffin v. Illinois, 351 U.S. 12, 76 S. Ct. 585 (1956).

## II. Petitioner's § 440 Motion

While his direct appeal was pending, on February 28, 2007, Petitioner moved to vacate his conviction pursuant to New York Criminal Procedure Law § 440, contending that his warrantless arrest was illegal. On July 31, 2007, the court held that the

motion was both procedurally barred and meritless. (See Decision
and Order, dated July 31, 2007, Ex. O to Declaration in Opposition
to the Petition for a Writ of Habeas Corpus ("Decl. in Opp.").)  On
January 28, 2008, the Appellate Division denied leave to appeal,
and the New York Court of Appeals denied Petitioner's application
for leave to appeal. (See Decl. in Opp. Exs. Q and R.)

### III. Coram Nobis Petition

In a petition for a writ of error coram nobis, dated June 12,
2009, Petitioner claimed that his appellate counsel provided
ineffective assistance. (See Decl. in Opp. Ex. V.)  The Appellate
Division denied the petition and the New York Court of Appeals
denied leave to appeal. (See Decl. in Opp. Exs. Y and BB.)

### IV. Motion to Set Aside Sentence

On November 4, 2009, Petitioner filed a pro se motion to set
aside his sentence, pursuant to New York Criminal Procedure Law §
440.21.  The motion was denied on April 26, 2010. (See Decl. in
Opp. Ex. II.)  The Appellate Division denied leave to appeal, as
did the New York Court of Appeals. (See Decl. in Opp. Exs. LL, MM.)

Petitioner signed and dated the instant Petition on May 14,
2011 and the Court received it on May 19, 2011.  Respondent
concedes that the Petition is timely and that Petitioner has
exhausted all of his claims, but argues that the claims should be
dismissed on their merits or because they are procedurally barred.

12

## DISCUSSION

Petitioner raises five claims in his Petition: (1) that the prosecution improperly exercised peremptory challenges to remove all four Hispanics from the jury panel, in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79, 85, 106 S. Ct. 1712, 12716-17 (1986); (2) the Appellate Division improperly denied Petitioner access to the trial transcript in violation of the Equal Protection Clause; (3) the trial court improperly precluded Petitioner's counsel from cross-examining the Complainant about statements that bore on her credibility; (4) the trial court improperly discharged a sworn juror who stated she could remain impartial; and (5) the trial court improperly admitted prejudicial evidence that Petitioner participated in phone calls with the Complainant and another underage woman. (<u>See</u> Petition for Habeas Corpus, dated May 14, 2011, at 4-5.)

I. <u>AEDPA Standard of Review</u>

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if it "was based on an unreasonable determination of the facts in light of the evidence presented in

13

the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000); accord Harrington v. Richter, --- U.S. ---, 131 S. Ct. 770, 785 (2011); Bennett v. Miller, 419 Fed. App'x 18, 20 (2d Cir. 2011). The phrase "clearly established Federal law" limits the law governing a habeas Petitioner's claims "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74, 127 S. Ct. 649, 653 (2006) (quoting Williams, 529 U.S. at 412, 120 S. Ct. at 1523).

"The 'unreasonable application' standard is independent of the 'contrary to' standard . . . [and] means more than simply an 'erroneous' or 'incorrect' application [of federal law]." Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005) (citing Williams, 529 U.S. at 410, 120 S. Ct. at 1522). A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal rule, but applies it in an

unreasonable manner to the facts of a particular case. See Williams, 529 U.S. at 413, 120 S. Ct at 1523.

The inquiry for a federal habeas court is not whether the state court's application of the governing law was incorrect, but, rather, whether it was "objectively unreasonable." See id. at 408-10, 120 S. Ct. at 1521; Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) ("[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently. The state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable.").

Moreover, under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003) (citations omitted).

II. Batson Claim

Petitioner's first claim is that the prosecution improperly exercised peremptory challenges to remove all four Hispanics from

15

the jury panel. Respondent argues that the Appellate Division properly affirmed the trial court's determination that the prosecution's exercise of its peremptory challenges was not discriminatory.

The United States Supreme Court has established a three-step analysis to evaluate claims that a party exercised its peremptory challenges in violation of the Equal Protection Clause. See Batson, 476 U.S. at 96, 106 S. Ct. at 1723; McKinney v. Artuz, 326 F.3d 87, 97 (2d Cir. 2003). First, the moving party must make a prima facie showing that the proponent of the strikes excluded jurors on the basis of race or another protected category. See Batson, 476 U.S. at 96-97, 106 S. Ct. at 1723; McKinney, 326 F.3d at 97. Second, if the moving party makes such a showing, the proponent of the strike must offer explanations that are more than simple denials of discrimination. See Batson, 476 U.S. at 97-98, 106 S. Ct. at 1723. Third, if the proponent satisfies its burden, the moving party must establish, by a preponderance of the evidence, that the prosecution's race-neutral explanations were merely pretextual, and that the challenges were actually motivated by purposeful discrimination. See Hernandez v. New York, 500 U.S. 352, 363, 111 S. Ct. 1859, 1868 (1991); Batson, 476 U.S. at 98, 106 S. Ct. at 1724; McKinney, 326 F.3d at 98.

Throughout the three Batson steps, the burden remains with the

16

moving party. "It is not until the _third_ step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." Purkett v. Elem, 514 U.S. 765, 768, 115 S. Ct. at 1769, 1771 (1995) (per curiam) (emphasis in original) (internal citations omitted). Typically, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. Because the evidence on this issue is often vague or ambiguous, the best evidence often will be the demeanor of the attorney who exercises the challenge. See Wainwright v. Witt, 469 U.S. 412, 428, 105 S. Ct. 844, 854 (1985). Evaluation of the attorney's credibility lies "peculiarly within a trial judge's province." Id.

 This determination is a finding of fact, which is entitled to great deference by the reviewing court. See Felker v. Jackson, ---U.S. ---, 131 S. Ct. 1305, 1307 (2011) ("AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" (quoting Renico v. Lett, 559 U.S. ---, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks omitted)); Purkett, 514 U.S. at 769, 115 S. Ct. at 1771 ("In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if

17

they are 'not fairly supported by the record.'") (internal citation omitted); <u>United States v. Douglas</u>, 525 F.3d 225, 239 (2d Cir. 2008) ("Since 'a finding [as to whether there was] intentional discrimination is a finding of fact,' and 'the trial court findings in . . . this context . . . largely will turn on evaluation of credibility,' the trial court's finding as to whether the prosecution's reason was race-neutral may be overturned only if that finding is clearly erroneous.") (quoting <u>Hernandez v. New York</u>, 500 U.S. at 364).

Step one of the <u>Batson</u> analysis is not at issue here, as the Appellate Division determined there was a <u>prima facie</u> case of discrimination with respect to Hispanic jurors. <u>See Rosado</u>, 53 A.D.3d at 455, 862 N.Y.S.2d at 42. Moreover, a <u>prima facie</u> case of discriminatory intent becomes irrelevant to the analysis of a peremptory challenge once the trial court proceeds to the second and third steps, as it did here. <u>See Hernandez</u>, 500 U.S. at 359, 111 S. Ct. at 1859. Moving to the second and third <u>Batson</u> steps, the trial court found that the prosecution's explanations for exercising peremptory challenges against each of the four panelists were non-pretextual and race-neutral.

With respect to juror Blanco, the trial court determined that she was struck as a result of her brother's prior experience with the criminal justice system. (<u>See</u> B. Tr. at 32-33.) Such a

justification has been found to be race-neutral.  See Green v. Travis, 414 F.3d 288, 300-01 (2d Cir. 2005) (finding that avoidance of jurors whose family members had either been arrested or undergone negative experiences with the police is race-neutral explanation for peremptory challenges).  As to Petitioner's comparison between prospective jurors Blanco and Addison, the trial court found the "tone and quality" of their involvement with the criminal justice system differed and that the comparison was insufficient to demonstrate that the prosecution struck Blanco but not Addison because Blanco was Hispanic.[3]

Prospective juror Mejia was struck because of his work in social research and his wife's occupation of a social worker. (See id. at 34-36.)  Although it was unclear whether Mejia's work in conducting "social research" technically qualified him as a social worker, his work was related to social work and his wife was a social worker.  Courts have accepted that the nature of a juror's or juror's spouses's profession is a legitimate ground for striking a juror. See, e.g.,United States v. Biaggi, 853 F.2d 89, 96 (2d Cir. 1988) (concluding that the occupation of the jurors or their spouses comprised legitimate reasons for exercising challenges);

_____

[3] Addison had been arrested for theft of services and her case was dismissed; Blanco's brother had been convicted, served jail time, and then violated probation.  (See B. Tr. at 33.)

Rodriguez v. Senkowski, No. 03 Civ. 3314 (AJP), 2004 WL 503451, at *33 (S.D.N.Y. Mar. 15, 2004) (Report and Recommendation, adopted on July 6, 2004) (approving as race-neutral the challenge to a juror who was a social worker who worked with substance abusers, and stating: "'[C]ourts have generally upheld challenges based on employment as nondiscriminatory and plausible,' and prosecutors often consider persons in the 'helping professions' to be defense oriented.") (footnote and internal citation omitted) (citing Cruz v. Artuz, No. 96 Civ. 5209, 1997 WL 269591 at *6 n.7 (E.D.N.Y. Apr. 21, 1997), aff'd mem., 133 F.3d 906 (2d Cir. 1997)).

The prosecution struck prospective juror Alberto because he indicated that he did not wish to serve on a jury and his health problems would cause him to miss or be inattentive during the trial proceedings. (See B. Tr. at 33-34.) This is a legitimate basis for striking a juror. See Valentine v. New York, 252 Fed. App'x 388, 89 (2d Cir. 2007) (finding that trial judge appropriately credited prosecutor's concern with juror's attentiveness as a race-neutral explanation); United States v. Rudas, 905 F.2d 38, 41 (2d Cir. 1990) ("[C]oncern about a juror's inattentiveness is a good reason for . . . exercising a peremptory challenge.").

Finally, the court accepted that Erazo was struck because he had previously sat on a jury that did not reach a verdict. (See B. Tr. at 37-39.) Specifically, with respect to Erazo, the court

explained that the prosecutor was bound by a court instruction not to ask whether jurors had sat on a hung jury or in a case that reached settlement, and he did **not** find the prosecutor "disingenuous" in concluding that he was concerned that the trial on which Erazo had sat had ended in a hung jury. (Id. at 38.) This has also been found to a legitimate, nondiscriminatory basis for a juror challenge. See United States v. Ruiz, 894 F.2d 501, 506-07 (2d Cir. 1990) (rejecting Batson challenge of peremptory strike of Hispanic juror who had participated in two prior cases that resulted in hung juries); Grate v. Hunt, No. 06 Civ. 4981, 2010 WL 185651, at *4 (E.D.N.Y. Jan. 11, 2010) ("A prospective juror's prior experience of serving on a hung jury has been recognized as a race-neutral reason for a peremptory challenge.") (quoting Christian v. Artus, No. 04 Civ. 10174 (MHD), 2006 WL 2463432, at *22 (S.D.N.Y. Aug. 22, 2006)).   In addressing Petitioner's argument that Erazo's other characteristics were those that the prosecutor was looking for, the court explained that it does not "[reflect] a discriminatory intent just because there are other criteria that would be favorable to [the prosecution's] notion of . . . a juror profile that she would be seeking in this case." (B. Tr. at 38-39.)

Upon a review of the record, the Appellate Division concluded that the lower court's findings with respect to the juror

21

challenges were entitled to great deference and there was no reason
to disturb them.  See People v. Rosado, 53 A.D.3d 455, 455, 862
N.Y.S.2d 41, 42 (2008).

Petitioner has provided no basis for this Court to conclude
that  the  state  courts'  findings,  which  are  entitled  to  a
presumption of correctness, were contrary to or an unreasonable
application of Batson.  Accordingly, this Court recommends that
Petitioner's Batson claim be dismissed.

III. Equal Protection Claim for Denial of Trial Transcripts

Petitioner's  second  claim  is  that  the  trial  court  and
Appellate Division improperly denied his request for free copies of
the trial and pretrial transcripts.  Petitioner contends that the
state courts denied these transcripts in violation of the Equal
Protection Clause as interpreted in Griffin v. Illinois, 351 U.S.
12, 76 S. Ct. 585 (1956).  Respondent argues that Griffin is
inapplicable because Petitioner was represented by counsel who had
access to the transcripts.

Griffin and subsequent cases hold that, under the Due Process
and Equal Protection clauses, "[d]estitute defendants must be
afforded as adequate appellate review as defendants who have money
enough to  buy transcripts," id. at 19, 76 S. Ct. at 591, and "a
State denies a constitutional right guaranteed by the Fourteenth
Amendment if it allows all convicted defendants to have appellate

review except those who cannot afford to pay for the records of their trials," Eskridge v. Washington State Bd. of Prison Terms & Paroles, 357 U.S. 214, 216, 78 S. Ct. 1061, 1062 (1958). See also Draper v. State of Washington, 372 U.S. 487, 496, 83 S. Ct. 774, 779 (1963) (explaining that "[i]n all cases the duty of the State is to provide the indigent as adequate and effective appellate review as that given appellants with funds — the State must provide the indigent defendant with means of presenting his contentions to the appellate court which are as good as those available to a nonindigent defendant with similar contentions.").

The state courts' denial of Petitioner's request for free transcripts was not contrary to, or an unreasonable application of, Griffin. Griffin involved a claim by indigent defendants with no means of paying the fees necessary to acquire transcripts and court records required by state law to prosecute an appeal. See Griffin, 351 U.S. at 13, 76 S. Ct. at 58. In other words, the petitioners were barred from appellate review "solely because they were too poor to buy a stenographic transcript." Id. at 16, 76 S. Ct. at 589. Here, Petitioner was not denied appellate review; he was represented on appeal by counsel and his counsel received a copy of the trial transcript. Rather, Petitioner was denied an additional free trial transcript, which he sought in order to file a pro se supplemental brief, in addition to the appellate brief submitted on

23

his behalf by counsel.  Unlike the state in Griffin, New York has complied with its constitutional obligation to provide transcripts to indigent criminal defendants so that they may pursue their appeals.  See N.Y. Crim. Proc. Law § 460.70 (McKinney's 2011). Griffin did not entitle Petitioner to an additional copy of the transcript, when it was available to Petitioner's assigned counsel. See U.S. ex rel. Garcia v. Martin, 271 F.2d 298, 301 (2d Cir. 1959) ("[W]here the defendant has counsel, as Garcia did at this stage of the state proceedings, there is no constitutional requirement that he be provided with physical custody of a copy of the transcript when it is on file and available to the lawyer in the county clerk's office and to the appellate court on its order."); U. S. ex rel. Hicks v. Fay, 230 F. Supp. 942, 948 (S.D.N.Y. 1964) ("If a defendant is represented by counsel on appeal who has access to the trial transcript . . . there is no constitutional requirement that the defendant be provided with physical custody of a copy of the transcript . . . since he is afforded a reasonable opportunity to point out on appeal the errors allegedly committed at the trial") (citation omitted); U.S. ex rel. Richards v. Bartlett, 830 F. Supp. 695, 700 (E.D.N.Y. 1993) (holding that the petitioner was not unconstitutionally denied free trial transcripts to prepare a pro se supplemental brief when the transcript was provided to the petitioner's counsel and the petitioner could have requested

24

counsel's assistance, used counsel's appellate brief, or obtained access to counsel's copy of the transcript).

The state courts, therefore, did not act contrary to <u>Griffin</u> when they denied Petitioner's request for free transcripts. Accordingly, this Court recommends that Petitioner's equal protection claim under <u>Griffin</u> be dismissed.

IV. <u>Sixth Amendment Claim Regarding the Discharge of a Sworn Juror</u>

Petitioner's third claim is that his Sixth and Fourteenth Amendment rights were violated when the trial court, relying on New York Criminal Procedure Law § 270.35(1), dismissed a sworn juror who the court determined to have engaged in gross misconduct — she was found to have passed a note to a court officer, made a remark during the Complainant's cross-examination that was critical of an inconsistency in the testimony, and also commented negatively on the Complainant's appearance — although the juror swore she could remain impartial.  The Appellate Division determined that,

> [a]fter hearing from the prosecutor, the prosecutor's intern, a court officer, the juror in question and two other jurors, the court concluded that the juror had, notwithstanding the court's instructions to the contrary, already formed an opinion as to both the credibility of the complainant and the "guilt or nonguilt" of defendant. The record developed by the court's probing inquiry supports its conclusion that the juror possessed a state of mind that prevented her from rendering an impartial verdict.

<u>Rosado</u>, 53 A.D. 3d at 457, 862 N.Y.S.2d at 43.  Respondent argues that the substitution of one juror for another does not present a

25

constitutional question for habeas review.

The "right to trial by a jury selected with the participation of the defendant has not been recognized as applying to the discharge of one juror and his replacement by an alternate on the panel." Mackensy v. Miller, No. 00 Civ. 9296 (DAB), 2010 WL 101321, at *8 (S.D.N.Y. Jan 12, 2010). A criminal defendant has a right to a trial by an impartial jury. See U.S. Const. amend. VI. Where there is reason to question a juror's impartiality, the essential constitutional requirement is that the trial court intervene to ensure that the jury that makes an ultimate determination does so fairly and without prejudice. See United States v. Perez, 387 F.3d 201, 207 (2d Cir. 2004). This is an area in which trial judges are vested with broad discretion, which is cabined only by the requirement that there be no prejudice to the defendant through a biased jury. See United States v. Purdy, 144 F.3d 241, 274 (2d Cir. 1998) ("courts . . . have broad discretion to replace a juror at any time before the jury retires if there is reasonable cause to do so, and a reviewing court will only find an abuse of discretion where there is 'bias or prejudice' to the defendant"); United States v. Rosario, 111 F.3d 293, 299 (2d Cir. 1997) ("a trial judge is vested with very broad discretion to deal with problems that arise in connection with jury deliberations or a juror's fitness to deliberate."); Batson v. Artus, No. 08 Civ. 3425(RJD), 2010 WL

26

5067696, at *2 (E.D.N.Y. Dec. 6, 2010) ("Federal law provides that
the substitution of an alternate juror for reasonable cause is the
prerogative of the court and does not require the consent of any
party . . . Even if the trial judge erred in dismissing Juror No.
6, habeas relief would not be warranted as Petitioner does not
allege, let alone establish, that he was prejudiced by the
substitution.") (internal quotation marks omitted); Mackensy, 2010
WL 101321, at *5 (citing United States v. Perez, 387 F.3d 201, 208
(2d Cir. 2004) (holding that the defendant could not succeed on a
constitutional challenge based on an error during jury selection
because he did not dispute that the jury that ultimately convicted
him was fair and impartial)); Wheeler v. Phillips, No. 05 Civ. 4399
(JFB), 2006 WL 2357973, at *6 (E.D.N.Y. Aug. 15, 2006) (holding
that dismissal and replacement of jurors with alternates due to
jurors' unavailability did not raise a constitutional issue because
"[f]or example, there is no allegation that the replacement was
biased, or that some constitutional infirmity ensued as a result of
the court's decision").

Here, the trial court determined that Juror Number 6 had
engaged in "gross misconduct" as defined by New York law. See New
York Crim. Proc. L. § 270.35(1) (a trial judge must discharge a
juror after the juror is sworn, but before the rendition of a
verdict, if the juror is "grossly unqualified to serve in the case

27

or has engaged in misconduct of a substantial nature, but not warranting the declaration of a mistrial"). The Appellate Division affirmed the trial court's determination, agreeing that the juror had formed an opinion as to Petitioner's "guilt or nonguilt" and the Complainant's credibility. See Rosado, 53 A.D.3d at 457, 862 N.Y.S.2d at 43. Barring an argument that the jury that convicted Petitioner was biased, this Court cannot review the claim. See McCrary v. Artuz, No. 95 Civ. 622, 1995 WL 728423, at *4 (E.D.N.Y. Nov. 28, 1995) (holding that questions of juror discharge under section 270.35 are purely matters of state law and are not cognizable on federal habeas review).

Petitioner has neither argued nor demonstrated that the jury that ultimately convicted him was biased and, therefore, he does not raise a constitutional question cognizable on federal habeas review. Accordingly, this Court recommends that Petitioner's claim regarding the discharge of a sworn juror be dismissed.

V. Confrontation Clause Claim Regarding Restriction on Cross-Examination of Complainant

Petitioner's fourth claim is that the trial court erroneously precluded him from cross-examining the Complainant, in violation of the Confrontation Clause, on issues related to her credibility. Specifically, Petitioner contends that he was entitled to cross-examine the Complainant about statements she wrote in her blog

concerning such things as "self-mutilation," "cult-related" activities, "black magic," "Gothic" culture, and doing violence to her parents. The court reviewed the information, heard argument, and ruled that none of the Complainant's blog postings referred to Petitioner or her relationship with Petitioner, that they did not suggest hallucinations, "flights of fancy," or an impaired sense of reality, and "they would be totally unhelpful to the jury in resolving issues." (See Tr. at 63-76.) On appeal, the Appellate Division rejected Petitioner's claim, concluding that nothing in the Complainant's blog "tended to establish that the complainant had a motive to fabricate her testimony," that Petitioner was given sufficient latitude in testing the Complainant's credibility, and, even if there was error in precluding the cross-examination, it was harmless. See Rosado, 53 A.D. 3d at 456, 862 N.Y.S.2d at 43. The state courts' determinations did not unreasonably apply clearly established Supreme Court law.

The Confrontation Clause of the Sixth Amendment guarantees to a criminal defendant the right to be confronted by the witnesses against him. See U.S. Const. amend. VI; Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S. Ct. 1431, 1435 (1986). A violation of the Confrontation Clause occurs when a defendant is "prohibited from engaging in otherwise appropriate cross-examination designed . . . to expose the jury to facts [from which] the

29

jurors . . . could appropriately draw inferences relating to the reliability of the witness." Van Arsdall, 475 U.S. at 680, 106 S. Ct. at 1436; (internal quotation marks omitted); see also United States v. Estrada, 430 F.3d 606, 621 (2d Cir. 2005) ("The Supreme Court . . . has found a Confrontation Clause violation where '[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had . . . counsel been permitted to pursue his proposed line of cross-examination.'") (citing Van Arsdall, 475 U.S. at 680); Cotto v. Herbert, 331 F.3d 217, 219 (2d Cir. 2003) ("Because cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested, the opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process.") (internal citations, quotation marks, and emendations omitted).

Nonetheless, the right to cross-examination is not unrestricted. As the Supreme Court has recognized:

> [i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an

<u>opportunity</u> for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

<u>Van Arsdall</u>, 475 U.S. at 679, 106 S. Ct. at 1435 (quoting <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20, 106 S. Ct. 292 (1985)) (emphasis in original).

"Combining the standard for restricting cross-examination with the AEDPA standard," a violation of the Confrontation Clause may be found when the court concludes "not only that the trial court abused its 'broad discretion' by precluding cross-examination . . . but also that the Appellate Division could not reasonably have determined that [the evidence] would have been excludable had the trial court properly applied 'standard rules of evidence' concerning admissibility." <u>Watson v. Green</u>, 640 F.3d 501, 510 (2d Cir.), <u>cert. denied</u>, 132 S. Ct. 335 (2011) (quoting <u>Wade v. Mantello</u>, 333 F.3d 51, 62 (2d Cir. 2003) and <u>Taylor v. Illinois</u>, 484 U.S. 400, 410, 108 S. Ct. 646 (1988)) (internal quotation marks omitted).  This Court assesses whether the state courts' denial of Petitioner's Confrontation Clause claim was reasonable, and, where the state court decision does not explain the reason for the denial, the petitioner's burden "'must be met by showing there was no reasonable basis for the state court to deny relief.'" <u>Watson</u>, 640 F.3d at 511 (quoting <u>U.S. v. Richter</u>, --- U.S. ---, 131 S. Ct. 770, 784 (2011)).

31

Moreover, even if the trial court's restriction of cross-examination was contrary to or resulted from unreasonable application of federal law, Confrontation Clause errors are subject to harmless error analysis on habeas review. See Benn v. Greiner, 402 F.3d 100, 105-06 (2d Cir. 2005); Cotto, 331 F.3d at 253. In conducting the harmless error review, the question is whether the Confrontation Clause violation resulted in an exclusion of material evidence that "would have created a reasonable doubt that did not otherwise exist." Lugo v. Edwards, 97 Civ. 7789 (DC), 1998 WL 601080, at *4 (S.D.N.Y. Sept. 9, 1998); see also Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006). "This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." United States v. Agurs, 427 U.S. 97, 112-13, 96 S. Ct. 2392, 2402 (1976). In determining whether a Confrontation Clause violation was harmless, factors to consider include the "importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438.

32

Here, the restriction on cross-examination was narrow and limited to evidence that the trial court, in its discretion, deemed irrelevant to the Complainant's credibility.  As the Appellate Division found, the Complainant's blog posts did not relate to the Complainant's relationship with Petitioner or indicate that the Complainant would have reason to fabricate her testimony.  Rosado, 53 A.D.3d at 456, 862 N.Y.S.2d at 42.  Notwithstanding the restriction, Petitioner was able to cross-examine the Complainant extensively on other important issues that bore on her credibility, such as the fact that she lied to her mother about where she was going when she met with Petitioner, (see Tr. at 19, 25, 29, 49-50, 121-22, 126),  that she told the police at one point that she had not had sexual intercourse with Petitioner, (see id. at 140, 154, 236), and that she had communicated with the prosecutor and Petitioner's counsel in order to recant her accusation and grand jury testimony (see id. 141-42, 158-60 162-66).

Because the restriction on cross-examination was a legitimate exercise of the trial court's discretion, and the Appellate Division did not unreasonably conclude that the limitation on cross-examination was appropriate under New York law, there was no confrontation violation.

Moreover, even if the trial court's restriction on cross-examination was erroneous, that error was harmless.  As discussed,

Petitioner was otherwise "given sufficient latitude" to cross-examine the Complainant with respect to both her credibility and her relationship with Petitioner.  See Rosado, 53 A.D.3d at 456, 862 N.Y.S.2d at 42.  The Complainant's testimony about her sexual relationship with Petitioner was also corroborated by other witnesses, including the Complainant's friends and a friend of Petitioner.  For example, the Complainant's friends accompanied her to Petitioner's apartment, where the Complainant and Petitioner spent extended periods of time behind the closed bedroom door. (See id. at 163-64, 248-49, 250-51, 255, 265, 267-68, 271, 281.) Petitioner's friend testified that, while Petitioner was incarcerated, Petitioner asked him to tell the Complainant that he still loved her.  And another of Petitioner's friends testified that Petitioner had her initiate a three-way telephone conversation with the Complainant, while Petitioner was incarcerated, in which Petitioner told the Complainant that he wanted more contact with her and needed her help. (See Tr. at 163-64, 234, 281, 283-84, 287-89.)  In light of all of this evidence and the extensive probing of the Complainant's credibility, there is little question that had defense counsel been permitted to cross-examine the Complainant about her blog posts, her testimony would not have given rise to a reasonable doubt about Petitioner's guilt.

Accordingly, this Court recommends that Petitioner's

34

Confrontation Clause claim be dismissed.

VI. <u>The Admission of Evidence of Phone Calls Between Petitioner and</u>
<u>Complainant</u>

Petitioner's fifth and final claim is that the state court improperly admitted evidence that Petitioner had telephone conversations with the Complainant while he was incarcerated, and, specifically, had participated in phone calls with the Complainant and another underage female in which the Complainant told her how much he loved her and told her she should try or help him out and make it better for him.   In addressing the issue, the Appellate Division concluded that Petitioner's claim was unpreserved for review and it declined to review the claim in the interests of justice. <u>See</u> <u>Rosado</u>, 53 A.D.3d at 457, 862 N.Y.S.2d at 44. Respondent argues that Petitioner's claim is procedurally barred because Petitioner failed to make a contemporaneous objection during the trial, as required by New York law.   Further, Respondent contends, Petitioner's claim is without merit.

Before a federal habeas court can reach the merits of a state evidentiary law claim, it must determine whether review of the claim is barred on the basis of an adequate and independent state ground.   <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991); <u>Richardson v. Greene</u>, 497 F.3d 212, 217-18 (2d Cir. 2007).   A procedural bar is adequate  only if it "is firmly

35

established and regularly followed" by the state in question. <u>Martinez v. Ryan</u>, --- U.S. ---, 132 S. Ct. 1309, 1316 (2012); <u>see</u> <u>Walker v. Martin</u>, --- U.S. ---, 131 S. Ct. 1120, 1128 (2011); <u>Cotto</u>, 331 F.3d at 239.

To preserve an issue for appeal under New York law, a contemporaneous objection must be lodged at trial, and if the objection is not sustained, the objecting party must seek further relief, such as a mistrial. <u>See</u> N.Y. Crim. Proc. Law § 470.05(2) (McKinney's 2011); <u>Whitley v. Ercole</u>, 642 F.3d 278, 286 (2d Cir. 2011) ("This rule has been interpreted by New York courts to require, at the very least, that any matter which a party wishes to preserve for appellate review be brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error." (internal quotation marks omitted); <u>Garvey v. Duncan</u>, 485 F.3d 709, 714 (2d Cir. 2007) ("[A] defendant must make his or her position known to the court. The purpose of this rule is to apprise the trial judge and the prosecution of the nature and scope of the matter defendant contests, so that it may be dealt with at that time. A general objection is not sufficient to preserve an issue.") (internal citations omitted)).

New York's codified contemporaneous objection rule is a well established procedural rule that qualifies as an independent and

adequate state basis for denying a claim in a federal habeas corpus proceeding. See Whitley, 642 F.3d at 287; Garcia, 188 F.3d at 78-79; Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994); Fernandez v. Leonardo, 931 F.2d 214, 216 (2d Cir. 1991). Moreover, the rule is regularly followed in the context of challenges to the admission of hearsay or other evidence. See People v. Batista, 92 A.D.3d 793, 793, 938 N.Y.S.2d 479 (2d Dep't 2012); People v. Erskine, 90 A.D.3d 674, 933 N.Y.S.2d 740 (2d Dep't 2011); People v. Bogar, 84 A.D.3d 1750, 1751, 922 N.Y.S.2d 694, 695 (4th Dep't 2011).

If a state court based its judgment on an independent and adequate state procedural rule, federal courts generally cannot review that judgment in a habeas corpus proceeding unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. at 2565; see also Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006); Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003). To demonstrate cause for his default, a petitioner must show "that 'some objective factor external to the defense impeded [his] efforts' to raise the claim in state court." McCleskey v. Zant,

37

499 U.S. 467, 493, 111 S. Ct. 1454, 1470 (1991) (quoting Murray v. Carrier, 477 U.S. 467, 488, 106 S. Ct. 2639, 2645 (1986)); see Rolling v. Fischer, 433 F. Supp. 2d 336, 346 (S.D.N.Y. 2006). Once a petitioner shows cause, the petitioner must also establish prejudice by demonstrating that there is a "reasonable probability" that, but for the constitutional violation that is the subject of the defaulted claim, the outcome of the relevant proceeding would have been different. See Strickler v. Greene, 527 U.S. 263, 289, 119 S. Ct. 1936, 1952 (1999); McClesky, 499 U.S. at 494, 111 S. Ct. at 1471. Alternatively, a miscarriage of justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496, 106 S. Ct. at 2649; see also Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998); James, 996 F.2d at 1447. Further, "[a]ctual innocence means factual innocence, not mere legal insufficiency." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (quoting Bousley, 523 U.S. at 623, 118 S. Ct. at 1611) (internal quotation marks omitted). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . ." Schlup v. Delo, 513 U.S. 298, 324, 115 S. Ct. 851, 865 (1995). The doctrine of actual innocence applies only in "extraordinary case[s]" and "credible claims of actual innocence

38

are extremely rare." Doe v. Menefee, 391 F.3d 147, 160-61 (2d Cir. 2004) (quoting Murray, 477 U.S. at 479, 106 S. Ct. at 2642, and Schlup, 513 U.S. at 321, 115 S. Ct. at 864) (internal quotation marks omitted).

Here, Petitioner's failure to comply with New York's contemporaneous objection rule bars review of his claim. The trial court originally sustained defense counsel's position and ruled that the telephone conversations between Petitioner and the Complainant would be precluded as evidence of consciousness of guilt. The court ruled, however, that if defense counsel opened the door on cross-examination, by attacking the Complainant's credibility through evidence that she had at one point recanted her accusations, the prosecution would be permitted to bring in evidence of the telephone calls with the Complainant as a partial explanation for the purported recantation. No objection was raised to that ruling. (See Tr. at 55-58.) In fact, defense counsel went on to open the door by cross-examining the Complainant about her recantation. The prosecutor then questioned the Complainant about her phone conversations with Petitioner and whether they motivated her recantation. Petitioner's attorney did not lodge an objection following the trial court's decision to admit previously excluded evidence. (See Tr. at 144.)

Petitioner has not argued or demonstrated cause for his

39

procedural default, that is, his counsel's failure to raise a specific and contemporaneous objection to the admission of evidence.  In the absence of cause, the Court need not address the issue of prejudice.  See McCleskey, 499 U.S. at 502, 111 S. Ct. at 1474; Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985); Dixon v. McGinnis, 492 F. Supp. 2d 343, 352 (S.D.N.Y. 2007).  Further, nothing in the record suggests that exceptional circumstances that might give rise to a miscarriage of justice are demonstrated here. Petitioner does not assert actual innocence, nor does he advance any new evidence of his innocence.  See Schlup, 513 U.S. at 324, 326.

Accordingly, the Court recommends that Petitioner's evidentiary claim be denied as procedurally barred.[4]

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the Petition be dismissed with prejudice.  Further, because Petitioner has not made a substantial showing of the denial of a federal right, this Court recommends that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c)(2); Lucidore v.

---

[4] This claim is meritless as well.  The evidence of Petitioner's calls with the Complainant was not hearsay, since it was not admitted for the truth of the statements.  Nor was it admitted for the purpose of establishing consciousness of guilt. Instead, it was properly admitted to explain the Complainant's state of mind in writing her recantation letters.

N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000)  This Court further recommends certification, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the Court's order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 445-46, 82 S. Ct. 917, 921 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6(a) and (d) (2011).  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Katherine B. Forrest, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Forrest.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140, 145, 155, 106 S. Ct. 466, 470, 475 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:     May 4, 2012
           New York, New York